CT Corporation

**Service of Process Transmittal**
04/23/2018
CT Log Number 533206110

TO: Tracey Gilliam, Chief Counsel of Litigation
Metropolitan Life Insurance Company
200 Park Avenue
New York, NY 10166

RE: **Process Served in Illinois**

FOR: Metropolitan Life Insurance Company (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Allan S. Brodsky, Pltf. vs. Metropolitan Life Insurance Company, Dft. |
| **DOCUMENT(S) SERVED:** | Summonses, Attachment(s), Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Cook County Circuit Court - County Department - Law Division, IL<br>Case # 2018L003904 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/23/2018 at 10:30 |
| **JURISDICTION SERVED :** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, Not Counting the day of receipt |
| **ATTORNEY(S) / SENDER(S):** | Jerome F. Crotty<br>Rieck and Crotty, P.C.<br>55 West Monroe Street, Suite 3625<br>Chicago, IL 60603<br>312-726-4646 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/24/2018, Expected Purge Date: 04/29/2018<br><br>Image SOP<br><br>Email Notification, MetLife Litigation Intake litigationintake@metlife.com |
| **SIGNED:**<br>**ADDRESS:**<br><br><br>**TELEPHONE:** | C T Corporation System<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604<br>312-345-4336 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Summons - Alias Summons                                                    (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ALLAN S. BRODSKY

v.

METROPOLITAN LIFE INSURANCE COMPANY
(METLIFE GROUP, INC.)

No. 2018-L-003904

Defendant Address:
METROPOLITAN LIFE INSURANCE COMPANY
(METLIFE GROUP, INC.)
R/A CT CORPORATION
208 SOUTH LASALLE STREET
SUITE 814
CHICAGO, IL 60604

☑ SUMMONS  ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801_____ ,Chicago, Illinois 60602

☐ District 2 - Skokie    ☐ District 3 - Rolling Meadows    ☐ District 4 - Maywood
    5600 Old Orchard Rd.     2121 Euclid 1500     Maybrook Ave.
    Skokie, IL 60077     Rolling Meadows, IL 60008     Maywood, IL 60153

☐ District 5 - Bridgeview    ☐ District 6 - Markham    ☐ Richard J. Daley Center
    10220 S. 76th Ave.     16501 S. Kedzie Pkwy.     50 W. Washington, LL-01
    Bridgeview, IL 60455     Markham, IL 60428     Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 24909

Name: RIECK & CROTTY P C

Atty. for: ALLAN S. BRODSKY

Address: 55 W MONROE 3625

City/State/Zip Code: CHICAGO, IL 60603

Telephone: (312) 726-4646

Primary Email Address: kbrown@rieckcrotty.com

Secondary Email Address(es):

jcrotty@rieckcrotty.com

Witness: Tuesday, 17 April DOROTHY BROWN
Clerk of the Circuit Court

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)  (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Page 1 of 1

**DIE DATE**
05/10/2018

DOC.TYPE:   LAW
CASE NUMBER:   18L003904
DEFENDANT
METROPOLITAN LIFE INS CO
208 S LASALLE ST
CHICAGO, IL 60604
814

**SERVICE INF**
RM 801

ATTACHED

Summons - Alias Summons                                                                 (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ALLAN S. BRODSKY

v.

METROPOLITAN LIFE INSURANCE COMPANY
(METLIFE GROUP, INC.)

No. 2018-L-003904

Defendant Address:
METROPOLITAN LIFE INSURANCE COMPANY
(METLIFE GROUP, INC.)
R/A CT CORPORATION
208 SOUTH LASALLE STREET
SUITE 814
CHICAGO, IL 60604

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 _____ ,Chicago, Illinois 60602

☐ District 2 - Skokie
  5600 Old Orchard Rd.
  Skokie, IL 60077

☐ District 3 - Rolling Meadows
  2121 Euclid 1500
  Rolling Meadows, IL 60008

☐ District 4 - Maywood
  Maybrook Ave.
  Maywood, IL 60153

☐ District 5 - Bridgeview
  10220 S. 76th Ave.
  Bridgeview, IL 60455

☐ District 6 - Markham
  16501 S. Kedzie Pkwy.
  Markham, IL 60428

☐ Richard J. Daley Center
  50 W. Washington, LL-01
  Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 24909

Name: RIECK & CROTTY P C

Atty. for: ALLAN S. BRODSKY

Address: 55 W MONROE 3625

City/State/Zip Code: CHICAGO, IL 60603

Telephone: (312) 726-4646

Primary Email Address: kbrown@rieckcrotty.com

Secondary Email Address(es):

jcrotty@rieckcrotty.com

Witness: Tuesday, 17 April 2018

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

DIE DATE
05/10/2018

SERVICE INF
RM 801

ATTACHED

||||| 0 2 7 5 0 1 8 4 |||||

DOC.TYPE:    LAW
CASE NUMBER:   18L003904
DEFENDANT
METROPOLITAN LIFE INS CO
208 S LASALLE ST
CHICAGO, IL 60604
814

# Law DIVISION
## Litigant List

Printed on 04/18/2018

Case Number: 2018-L-003904

Page 1 of 1

## Plaintiffs

| Plaintiffs Name | Plaintiffs Address | State | Zip | Unit # |
|---|---|---|---|---|
| ALLAN S. BRODSKY | | | | |

Total Plaintiffs: **1**

## Defendants

| Defendant Name | Defendant Address | State | Zip | Unit # | Service By |
|---|---|---|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY (METLIFE GROUP, INC.) | 208 SOUTH LASALLE STREET CHICAGO, | IL | 60604 | SUITE 814 | Sheriff-Clerk |

Total Defendants: **1**

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
CALENDAR: S
PAGE 1 of 53
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| ALLAN S. BRODSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AT LAW FOR BREACH OF CONTRACT

### AND FOR DECLARATORY JUDGMENT

Plaintiff, Allan S. Brodsky ("Plaintiff"), by and through his attorneys, Rieck and Crotty,

P.C., as his complaint against the Defendant, Metropolitan Life Insurance Company (hereinafter

"MetLife"), states as follows:

### VENUE AND JURISDICTION

1. The Court has jurisdiction over this action because the matter in controversy

exceeds the sum of $30,000, exclusive of interest and costs.

2. Venue is also proper in this Court because Plaintiff is a resident of the State of

Illinois, Defendant transacts business in the State of Illinois and the cause(s) of action set forth in

this Complaint, in part, arose in the State of Illinois.

3. Venue is also proper in this Court because MetLife sold Plaintiff an individual long-

term care insurance policy in the State of Illinois.

### PARTIES

4. At all times mentioned herein, Plaintiff has resided at 1412 Maple Avenue in

Wilmette, Illinois.

5.    At all times mentioned herein, MetLife has been a corporation organized under the laws of the State of New York, with its principal place of business in New York, New York.

6.    MetLife is global provider of insurance, annuities, and employee benefit programs, including but not limited to long-term care insurance policies.

7.    MetLife is licensed to do business in the State of Illinois, regularly conducts business in Illinois and did business with Plaintiff in Illinois.

## FACTUAL BACKGROUND

8.    On July 12, 2006, Plaintiff purchased from MetLife and MetLife issued to Plaintiff a MetLife Long-Term Care Insurance Policy, No. 14363 -1111 (the "Policy"). A copy of the Policy provided Plaintiff by Defendant, with a Schedule of Benefits effective July 12, 2010 and without a copy of the application of Plaintiff which has been excluded pursuant to Illinois Supreme Court Rule 138 because it contains personal identity information of the Plaintiff, is attached hereto as "Exhibit A." A copy of the original Schedule of Benefits is attached hereto as Exhibit "B."

9.    The Policy, among other things, provides that MetLife shall pay the benefits provided by the Policy according to its terms and provisions.

10.    Pursuant to the terms and provisions of the Policy, upon Plaintiff becoming eligible for benefits, MetLife agreed to pay a base Basic Daily Benefit Amount of $400.00 for 2,555 days, or 7 years (the "Total Lifetime Benefit").

### The 5% Automatic Compound Inflation Protection Rider

11.    During the sale of the Policy to Plaintiff, MetLife offered to enhance the Policy Benefits by including a 5% Automatic Compound Inflation Protection Rider (the "5% Automatic Compound Inflation Protection Rider").

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 2 of 53

2

12.     With respect to the 5% Automatic Compound Inflation Protection Rider for the

Policy, the MetLife Long-Term Care Insurance Outline of Coverage ("Outline of Coverage") for

the Policy provides, at page 5, in paragraph 5B:

> 5% Automatic Compound Inflation Protection Rider. (See section 11) this Rider
> will provide you with an automatic increase in your benefit amounts each year with
> no corresponding increase in premium. If no benefits have been paid, the amounts
> of the increases are equal to 5% of the benefit amounts in effect at the end of the
> prior policy year."

A copy of the Outline of Coverage is attached hereto as Exhibit "C."

13.     Section 11 of the Outline of Coverage describes the 5% Automatic Compound

Inflation Protection Rider Benefit, as follows:

> 5% Automatic Compound Inflation Protection rider:  This Rider will provide You
> with an automatic increase in Your benefit amounts each year with no
> corresponding increase in premium. If no Benefits have been paid, the amounts of
> the increases are equal to five percent (5%) of the benefits amounts in effect at the
> end of the prior Policy Year; or ..." See Ex. C, Pg. 7.

14.     The 5% Automatic Compound Inflation Protection Rider further provides,

in pertinent part: "The benefit amount increases will occur on each Policy Anniversary for the

lifetime of Your policy, even when You are receiving Benefits. These increases will be made

without regard to Your age, claim status, claim history, health, or length of time you have been

covered under the policy." See the 5% Automatic Compound Inflation Protection Rider attached

as the final page of Ex. A.

15.     Finally, the Policy further provides, in pertinent part: "This Policy, with any Riders,

endorsements and written application attached, make up the entire contract." See Ex. A, Pg. 22.

16.     Plaintiff accepted such offer and purchased the 5% Automatic Compound Inflation

Protection Rider for the Policy.

17.     Thus, the 5% Automatic Compound Inflation Protection Rider is part of the Policy.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 3 of 53

3

18.     The initial, total annual premium for the Policy and Rider was $13,545.25. See Ex. B.

19.     The portion of the total annual premium attributable to Plaintiff purchase of the 5% Policy's Automatic Compound Inflation Protection Rider coverage for the Policy was $7,502.60, or 55.3% of the total annual premium. See Ex. B.

20.     Prior to July 12, 2010, Plaintiff timely paid MetLife all premiums due on the Policy and on the 5% Automatic Compound Inflation Protection Rider.

21.     During 2009, Plaintiff questioned MetLife telephonically how the premiums on the Policy could be reduced.

22.     Upon information and belief, Plaintiff's telephone calls with MetLife concerning his question were recorded by MetLife and such recordings are retained by MetLife.

23.     During such calls, MetLife recommended and offered Plaintiff an option whereby he could elect to reduce the base Basic Daily Benefit Amount as of the date of such change which would result in a reduction of his annual premium.

24.     As no time during Plaintiff's telephone discussions with MetLife concerning the reduction in his premiums did MetLife advise Plaintiff that if he accepted MetLife's recommendation and offer, the prior automatic increases in the Basic Daily Benefit Amount provided by the 5% Automatic Compound Inflation Protection Rider coverage that Plaintiff paid for would be forfeited.

25.     During such calls, MetLife advised Plaintiff that if he chose to elect a reduced Basic Daily Benefit Amount under the Policy he would be required by MetLife to continue to maintain and pay for the 5% Automatic Compound Inflation Protection Rider.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 4 of 53

4

26. On September 23, 2010, Plaintiff notified MetLife that he elected to reduce the base Basic Daily Benefit Coverage from $400 per day to $200 per day as recommended by MetLife so that his annual premium would be reduced.

27. When notifying MetLife of his election on September 23, 2010, Plaintiff directed MetLife with respect to all other provisions and benefits provided by the Policy that: "All else with this policy should remain the same." See a copy of such direction attached hereto as Exhibit "D."

28. After Plaintiff's September 23, 2010, election, MetLife did not inform Plaintiff that the additional Benefits Plaintiff purchased and paid for under the 5% Automatic Compound Inflation Protection Rider would change.

29. Prior to Plaintiff's September 23, 2010, election, as a result of Plaintiff's payments to MetLife of the annual premiums for the Policy and the 5% Automatic Compound Inflation Protection Rider coverage for 4 years, Plaintiff's Basic Daily Benefit Amount under the Policy, as adjusted by the 5% Automatic Compound Inflation Protection Rider. had increased by $86.21 (from $400.00 per day to $486.21 per day). See the July 12, 2010 Schedule of Benefits, Ex. A, Pg. 3.

30. After September 23, 2010, Plaintiff continued to timely pay all premiums as required by the Policy and the 5% Automatic Compound Inflation Protection Rider and as agreed by MetLife.

31. At no time after September 23, 2010, as Plaintiff continued to pay his annual premium, including the additional premium for the 5% Automatic Compound Inflation Protection Rider coverage, did MetLife advise Plaintiff that the previously purchased additional Daily Benefit Amount of $86.21 pursuant to the 5% Automatic Compound Inflation Protection Rider would be

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 5 of 53

5

reduced or forfeited as a result of his request to reduce the base Basic Daily Benefit Amount to reduce his premium.

**MetLife's Improper Forfeiture of Benefits in Violation of the Policy**

32.    In March 2014, Plaintiff made a claim against MetLife under the Policy for benefits as a result of debilitating Vertigo which made him unable to perform two or more activities of basic daily living as required by the Policy.

33.    In support of his claim, Plaintiff submitted to MetLife various medical records documenting his condition.

34.    On June 5, 2014, MetLife denied that Plaintiff was eligible to receive benefits under the policy.

35.    Thereafter, Plaintiff requested a review by MetLife of its denial of his eligibility to receive benefits under the Policy.

36.    In support of his request for review, Plaintiff submitted to MetLife additional medical records, as well as the statements of his medical providers.

37.    On August 21, 2015, approximately a year and a half after his original request to receive benefits, MetLife approved Plaintiff's eligibility for benefits effective February 9, 2015.

38.    On September 8, 2015, Plaintiff received the first check paying him his Basic Daily Benefit Amount under the Policy for the period from March 1, 2015, (after the 20-day elimination period following February 9, 2015), through August 31, 2015.

39.    Upon receipt of the first check, Plaintiff discovered that MetLife had reduced the $86.21 additional Basic Daily Benefit Amount Plaintiff purchased under the 5% Automatic Compound Inflation Protection Rider coverage prior to his September 23, 2010, election to $43.11.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 6 of 53

6

40.    The Policy does not provide that one-half of the additional Basic Daily Benefit Amount Plaintiff purchased pursuant to the 5% Automatic Compound Inflation Protection Rider prior to his September 23, 2010, election, would be forfeited if the base Basic Daily Benefit Amount or premiums were ever reduced.

41.    MetLife's unilateral forfeiture of 50% of the additional Basic Daily Benefit Amount purchased by Plaintiff pursuant to the 5% Automatic Compound Inflation Protection Rider between 2006 and 2010, is not allowed by any of the provisions, terms or conditions of the Policy.

42.    After discovering the forfeiture and improper reduction in the 5% Automatic Compound Inflation Protection Rider benefits Plaintiff purchased to compound and increase the Basic Daily Benefit Amount he purchased, Plaintiff asked MetLife to explain the basis, if any, for the same.

43.    On February 5, 2018, MetLife proffered to Plaintiff an explanation for its adjustment and calculation of Plaintiff's Daily Benefit Coverage under his Policy but has failed to explain the legal basis, if any, for its improper reduction in and forfeiture of the 5% Automatic Compound Inflation Protection Rider benefits Plaintiff purchased to compound and increase the Basic Daily Benefit Amount he purchased for the Policy.

44.    Based on the terms and conditions of the Policy, Plaintiff is entitled to the automatic increases in the Daily Benefit Coverage benefits as provided by the 5% Automatic Compound Inflation Protection Rider without any such reductions and forfeiture MetLife made.

45.    The difference in Basic Daily Benefit Amounts due and payable to Plaintiff each month and year as adjusted by the 5% Automatic Compound Inflation Protection Rider benefits Plaintiff purchased and paid for amount to $163,435.88.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 7 of 53

7

46.     MetLife's failure to notify Plaintiff of its intention to reduce Plaintiff's entitlements under the Policy, to interpret the Policy years later in a manner not reasonably to be expected to be understood by Plaintiff and others consumers like him and failure and vexatious refusal to pay Plaintiff the correct amounts due him all constitute unreasonable conduct which gives rise to Plaintiff's right to prejudgment interest under the Illinois Interest Act.

## COUNT I

## Breach of Contract

46.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 45 as if fully set forth herein.

47.     By purchasing the Policy, Plaintiff entered into a contract with MetLife.

48.     By purchasing and paying for the 5% Automatic Compound Inflation Protection Rider under the Policy, Plaintiff is contractually entitled to have his Daily Benefit Coverage benefits under the Policy automatically increase and compound each year, on each Policy Anniversary, by 5% of the Daily Benefit Amounts in effect at the end of the prior Policy year, as provided in the 5% Automatic Compound Inflation Protection Rider.

49.     MetLife breached its contract with Plaintiff by failing to automatically increase and compound Plaintiff's Daily Benefit Coverage amount under the Policy which should have automatically increased and compounded each year, on each Policy Anniversary, by 5% of the Daily Benefit Amounts in effect at the end of the prior Policy year as provided in the 5% Automatic Compound Inflation Protection Rider.

50.     As a result of MetLife's breach, Plaintiff has been deprived and will continue to be deprived of his Benefits under the Policy.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 8 of 53

8

51.     Therefore, Plaintiff has been damaged and continues to incur damages in excess of the sum of $30,000, exclusive of interest and costs.

WHEREFORE, Plaintiff, Allan S. Brodsky, request that the Court enter judgment in his favor and against Defendant, Metropolitan Life Insurance Company, in an amount in excess of $30,0000 and to grant Plaintiff prejudgment interest on the amounts due Plaintiff from the date such amounts were due him pursuant to 815 ILCS 205/2 and such other relief as the Court deems fair and equitable.

## COUNT II

### Declaratory Judgment

52.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 51 as if fully set forth herein.

53.     Declaratory judgment is proper in this case, pursuant to 735 ILCS 5/2-701, as an actual controversy exists among the parties as to their claims relative to their respective rights under the Policy as more particularly alleged herein.

54.     MetLife drafted the Policy.

55.     Plaintiff did not draft the Policy.

56.     The Policy does not allow for MetLife to forfeit Plaintiff's rights as Plaintiff complains herein.

57.     The Policy should be strictly construed against MetLife.

58.     Plaintiff prays that this Court declare MetLife breached its contract with Plaintiff by failing to automatically increase and compound Plaintiff's Daily Benefit Coverage amount under the Policy which should have automatically increased and compounded each year, on each

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 9 of 53

9

Policy Anniversary, by 5% of the Daily Benefit Amounts in effect at the end of the prior Policy

year as provided in the 5% Automatic Compound Inflation Protection Rider.

59.     Plaintiff also prays that this Court also declare MetLife's attempt to forfeit

Plaintiff's rights and failure to pay Plaintiff under the Policy and the 5% Automatic Compound

Inflation Protection Rider were unreasonable and vexatious and constitute an illegal forfeiture

which cannot be enforced by MetLife.

WHEREFORE, Plaintiff, Allan S. Brodsky, requests that the Court enter declaratory

judgment in his favor and against Defendant, Metropolitan Life Insurance Company, and order

MetLife to pay Plaintiff the monies MetLife has withheld from Plaintiff in the past and through

the term of the Policy and to grant Plaintiff prejudgment interest on the amounts due Plaintiff from

the date such amounts were due him pursuant to 815 ILCS 205/2 and to grant such other relief as

the Court deems fair and equitable.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 10 of 53

Respectfully submitted,

Allan S. Brodsky, Plaintiff,

By: _Jerome J. Crotty_
One of his attorneys

Jerome F. Crotty, Esq.
jcrotty@rieckcrotty.com
Kevin P. Brown, Esq. – Attorney Number 53777
kbrown@rieckcrotty.com
Bernard A. Henry, Esq.
bhenry@rieckcrotty.com
Rieck and Crotty, P.C. - Attorney Number: 24909
Attorneys for Plaintiff
55 West Monroe Street, Suite 3625
Chicago, Illinois 60603
Phone: (312) 726-4646
Fax:    (312) 726-0647

10

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 11 of 53

# EXHIBIT A

# MetLife®

## Metropolitan Life Insurance Company

A Stock Company Incorporated In New York State

Metropolitan Life Insurance Company (MetLife) will pay the benefits of this policy according to its provisions.

## Long-Term Care Insurance Policy

* **RENEWABILITY: THIS POLICY IS GUARANTEED RENEWABLE FOR LIFE. PREMIUM RATES ARE SUBJECT TO CHANGE.** This means You have the right, subject to the terms of the policy, to continue this policy as long as You pay Your premiums on time. We cannot change any of the terms of this policy without Your consent, except that We may change the premium rates, subject to applicable state Insurance Department approval. Any such change in premium rates will apply to all policies in the same class as Yours in the state where this policy was issued.

* The SCHEDULE OF BENEFITS provided by this policy is shown on page 3.

* This policy is not eligible for dividends.

> **THIS POLICY IS NOT APPROVED FOR MEDICAID ASSET PROTECTION UNDER THE ILLINOIS LONG-TERM CARE PARTNERSHIP PROGRAM. HOWEVER, THIS POLICY IS AN APPROVED TRADITIONAL LONG-TERM CARE CONTRACT UNDER STATE INSURANCE REGULATIONS. FOR INFORMATION ABOUT POLICIES APPROVED UNDER THE ILLINOIS LONG-TERM CARE PARTNERSHIP PROGRAM, CALL THE SENIOR HELPLINE AT THE DEPARTMENT OF AGING AT 1-800-252-8966.**

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 12 of 53

CAUTION: We issued this policy on the basis of Your responses to the questions on Your application. A copy of Your application is attached. If Your answers are incorrect or untrue, We may have the right to deny benefits or rescind Your policy. The best time to clear up any questions is now, before a claim arises. If, for any reason, any of Your answers are incorrect, contact Us at this address: Metropolitan Life Insurance Company, P O Box 990028, Hartford, CT 06199-0028.

**NOTICE TO THE BUYER: This policy may not cover all of the costs associated with long-term care incurred by the buyer during the period of coverage. The buyer is advised to review carefully ALL policy limitations.**

> **This policy is intended to be a qualified long-term care insurance contract under Section 7702B(b) of the Internal Revenue Code of 1986, as amended. If in the future, it is determined that this policy does not meet the requirements of the Internal Revenue Code, We will make every reasonable effort to amend the policy if We are required to do so in order to gain favorable federal income tax treatment. We will offer You an opportunity to receive these amendments, with any appropriate adjustments, as determined by MetLife, to premium rates and/or benefits.**

*Jeffrey A. Welikson*

**Jeffrey A. Welikson**
Senior Vice-President and Secretary

*C. Robert Henrikson*

**C. Robert Henrikson**
Chairman of the Board, President and Chief Executive Officer

**30-Day Right to Examine Policy. Please read this policy carefully. It is a legal contract between You and MetLife. If You are not satisfied for any reason, You may return this policy to Us or to the sales representative from whom You bought it within thirty (30) days from the date You receive it. If You return it within the thirty (30) day period, this policy will be void from the beginning. We will refund any premium paid within thirty (30) days after We receive the returned policy.**

LTC2-PREM-IL                                 1

THIS PAGE INTENTIONALLY LEFT BLANK

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 13 of 53

LTC2-PREM-IL

2

Metropolitan Life Insurance Company
P O Box 990028
Hartford, CT 06199-0028
Toll-Free Number: 1-888-565-3761

### SCHEDULE OF BENEFITS

### INSURED

Allan S Brodsky
1412 MAPLE AVENUE; WILMETTE, IL 60091

### CURRENT COVERAGE: EFFECTIVE DATE July 12, 2010
### (REPLACES ANY PREVIOUS SCHEDULE OF BENEFITS)

| | |
|---|---|
| Original Coverage Effective Date | July 12, 2006 |
| State of Issue | IL |
| Original Issue Age | 60 |
| Date of Birth | ███████ |
| Policy Number | 14363-11111 |
| Plan Number | 14363 |
| Elimination Period | 20 days |
| Benefit Period | 2,555 Days 7 Years |
| TOTAL LIFETIME BENEFIT (does not reflect claims paid or payable) | $1,242,266 |

**BENEFIT AMOUNTS**

| | |
|---|---|
| Facility Daily Benefit Amount | $486.21 |
| Basic Daily Benefit Amount | $486.21 |
| Needs Assessment | $275.00/lifetime |

**Health Rating:** Standard
**Discounts:** Spousal Discount
Spousal Discount applies as long as associated policies do not lapse.

### PREMIUM SCHEDULE

Gross Annual Premium (includes Riders and Health Rating; does not include Discounts, if any): $19,350.36

| COVERAGE | ANNUAL PREMIUM*  (includes Health Rating and Discounts) |
|---|---|
| Base Coverage | $ 6405.20 |
| 5% Automatic Compound Inflation Protection Rider | $ 7952.76 |
| Total Annual Premium with discounts applied | $ 14357.96 |
| Quarterly Premium Amount* | $ 3589.49 |

*If you pay premiums more frequently than annually, an additional cost has been included. Please refer to Your application, "How You Want to Pay Premiums", to explain the basis for any additional charge.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 14 of 53

**THIS PAGE INTENTIONALLY LEFT BLANK**

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 15 of 53

LTC2-PREM-IL                    3  [Continued]

## Table of Contents

The page numbers listed identify the first page of each section.

SCHEDULE OF BENEFITS ............................................................................................................ 3
DEFINITIONS OF POLICY TERMS .............................................................................................. 5
ELIGIBILITY FOR THE PAYMENT OF BENEFITS .................................................................... 10
  Eligibility for Benefits............................................................................................................ 10
  If You Need Benefits.............................................................................................................. 10
  Continuing Eligibility for Benefits ......................................................................................... 10
ELIMINATION PERIOD................................................................................................................ 11
BENEFIT PAYMENTS ................................................................................................................. 12
  Conditions for Benefit Payments .......................................................................................... 12
  Basic Daily Benefits .............................................................................................................. 12
  Facility Daily Benefits............................................................................................................ 12
  Bed Reservation Benefits ..................................................................................................... 12
  Needs Assessment Benefits.................................................................................................. 12
CONTINGENT BENEFITS UPON LAPSE ................................................................................... 13
  Definitions ............................................................................................................................. 13
  Eligibility for Contingent Benefits Upon Lapse..................................................................... 14
CHANGING BENEFIT AMOUNTS .............................................................................................. 15
  Benefit Increase With Proof of Good Health......................................................................... 15
  Benefit Decreases................................................................................................................. 15
EXTENSION OF BENEFITS ........................................................................................................ 16
LIMITATIONS AND EXCLUSIONS .............................................................................................. 17
  What is Not Covered Under This Policy ................................................................................ 17
PREMIUMS .................................................................................................................................. 18
  Premium Payment ................................................................................................................. 18
  Grace Period ......................................................................................................................... 18
  Waiver of Premiums............................................................................................................... 19
  Reinstatement........................................................................................................................ 19
  Reinstatement for Cognitive Impairment or Loss of Functional Capacity............................ 19
CLAIMS ........................................................................................................................................ 20
  Notice of Claim ...................................................................................................................... 20
  Claim Forms .......................................................................................................................... 20
  Proof of Claim ....................................................................................................................... 20
  Physical Examination............................................................................................................. 20
CLAIMS (CONTINUED) ............................................................................................................... 21
  Notice of Approval or Denial ................................................................................................. 21
  Appeals of Claims Denials .................................................................................................... 21
  Time of Payment of Claims.................................................................................................... 21
GENERAL PROVISIONS.............................................................................................................. 22
  The Contract .......................................................................................................................... 22
  Assignment; No Cash Value; Premium Refunds................................................................... 22
  Refund to Us for Overpayment of Benefits ........................................................................... 22
  Limitation on Representative's or Other Person's Authority ................................................. 22
  Statements Made By You Relating to Insurability ................................................................ 22
  Misstatement of Age .............................................................................................................. 23
  Legal Actions ......................................................................................................................... 23
  Termination of Policy ............................................................................................................. 23
  Conformity With State Statutes.............................................................................................. 23
  Tax Note ................................................................................................................................ 24
  Notice..................................................................................................................................... 24

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 16 of 53

# Definitions of Policy Terms

This section defines most of the words and phrases used in Your policy which have specific meaning. All terms with a defined meaning are capitalized and, except for *Our, Us, We, You* and *Your,* are **bolded** for easy identification throughout the policy.

**"Activities of Daily Living"** means any of the following:

* **Bathing:** Washing oneself by sponge bath; or in either a tub or shower, including the task of getting into or out of the tub or shower.

* **Dressing:** Putting on and taking off all items of clothing and any required braces, fasteners, or artificial limbs.

* **Transferring:** Moving into or out of a bed, chair or wheelchair.

* **Toileting:** Getting to and from the toilet, getting on and off the toilet, and performing related personal hygiene.

* **Continence:** Ability to maintain control of bowel and bladder function; or, when not able to maintain control of bowel or bladder function, the ability to perform related personal hygiene (including caring for catheter or colostomy bag).

* **Eating:** Feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table) or by feeding tube or intravenously.

**"Assisted Living Facility"** means a facility that meets ALL of the following:

* Maintains all appropriate licensing, if licensing is required, under the laws where it is located to provide **Maintenance or Personal Care**; and

* Provides twenty-four (24) hours a day **Maintenance or Personal Care** services sufficient to assist clients with needs which result from the inability to perform **Activities of Daily Living** or from **Severe Cognitive Impairment**; and

* Has at least three (3) clients; and

* Uses aides trained or certified to provide **Maintenance or Personal Care** in accordance with any laws which apply to the provision of such care; and

* Provides twenty-four (24) hour supervision of clients by a trained and awake staff; and

* Has formal arrangements for emergency medical care; and

* Maintains written records of services furnished to each client; and

* Serves clients three (3) meals a day; and

* Has appropriate methods and procedures to assist in administering prescribed drugs where allowed by law.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 17 of 53

## Definitions of Policy Terms (Continued)

An **Assisted Living Facility** is not, other than incidentally, a hotel, motel, a place for rest or a place for the treatment or rehabilitation of drug addiction or alcoholism. Retirement homes, congregate living, senior housing, or other facilities chiefly intended to provide residential services but not **Maintenance or Personal Care** do not typically qualify as an **Assisted Living Facility**. If an institution has more than one license or purpose, only that section of the institution specifically meeting the definition of **Assisted Living Facility** will qualify as an **Assisted Living Facility**.

**"Benefits"** means the amounts We will pay You subject to the provisions of the policy.

**"Care Advisor"** means a health care professional from a **Care Management Organization**.

**"Care Management Organization"** means:

1.  An organization operated and licensed as a **Care Management Organization** under the laws where it is located; or

2.  Any other organization that meets ALL of the following:

    *   Provides care advisory services; and

    *   Has a full-time administrator; and

    *   Maintains written records of services performed for each client; and

    *   Has a staff which includes at least one **Nurse** and one **Social Worker**.

**"Chronically Ill"** means You are unable to perform, without **Substantial Assistance** from another individual, at least two (2) **Activities of Daily Living ("ADL")** for an expected period of at least ninety (90) days due to a loss of functional capacity; or You require **Substantial Supervision** to protect You from threats to health and safety due to **Severe Cognitive Impairment**..

**"Custodial Care"** means services provided on an extended basis to a person who is **Chronically Ill**, which are aimed at maintaining a person's health and/or functional status. **Custodial Care** does not include any transportation or other service which is chiefly for personal convenience or companionship.

**"Domestic Partner"** means each of two people:

*   who have registered or filed as domestic partners or members of a civil union with a government agency or office where such registration is available; or

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 18 of 53

## Definitions of Policy Terms (Continued)

* who meet the following requirements:

    * each person is 18 years of age or older;

    * neither person is married;

    * they share the same residence;

    * they are not related by blood in a manner that would bar their marriage in the jurisdiction in which they reside; and

    * they have an exclusive mutual commitment to share the responsibility for each other's welfare and financial obligations and such commitment is expected to last indefinitely.

**"Elimination Period"** is the number of days after the **Original Coverage Effective Date** of this policy during which You must be **Chronically Ill** before certain **Benefits** become payable. These days need not be consecutive.

**"Facility"** means any of the following if located in the United States: a **Nursing Home**; an **Assisted Living Facility**; or a **Hospice Facility**.

**"Hospice Facility"** means a facility or unit of a facility that meets federal certification requirements as a Hospice, or is comparably licensed under the laws where it is located, to provide care or management of the **Terminally Ill**.

**"Insured"** means the person so named on page 3.

**"Lapse"** means termination of this policy because of failure to pay premiums.

**"Licensed Health Care Practitioner"** means a **Physician**; any registered professional **Nurse**; a licensed **Social Worker**; or other individual who meets such requirements as may be prescribed by the U.S. Secretary of the Treasury.

**"Maintenance or Personal Care"** means any care with the primary purpose of providing needed assistance when You are **Chronically Ill** (including protection from threats to health and safety due to **Severe Cognitive Impairment**). **Maintenance or Personal Care** services may include **Custodial Care** and needed assistance with **Activities of Daily Living** ("ADL").

**"Needs Assessment"** means the services provided by a **Care Advisor** to: (1) assess Your needs for long-term care services; (2) develop or work with others to develop options for Your long-term care; and (3) discuss the long-term care options with You or Your **Representative**.

**"Nonforfeiture Coverage"** means coverage provided under the Contingent Benefits Upon Lapse provision of this policy, or under the Nonforfeiture Coverage Rider if the Rider is shown on page 3 of this policy.

**"Nurse"** means a registered professional **Nurse** (R.N.), licensed practical **Nurse** (L.P.N.) or licensed vocational **Nurse** (L.V.N.) who is licensed under the laws where the services are performed.

**"Nursing Care"** means services: requiring the professional skills of a **Nurse**; performed by a **Nurse**; under the orders of a **Physician**; and to improve or maintain Your health.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 19 of 53

## Definitions of Policy Terms (Continued)

**"Nursing Home"** means a facility licensed as a skilled or intermediate nursing facility under the laws where it is located that meets ALL of the following:

*   Has twenty-four (24) hours a day **Nursing Care**; and

*   Has twenty-four (24) hours a day **Maintenance or Personal Care** performed by a trained/certified and awake staff supervised by a **Nurse**; and

*   Keeps a written record of services performed for each client; and

*   Has formal arrangements for emergency medical care; and

*   Services are not limited to provision of food, shelter, and other residential services such as laundry.

A **Nursing Home** is not, other than incidentally, a hospital (except a distinct part of a hospital which is a nursing facility), residential facility, hotel, motel, place for rest, home for the aged, sheltered living accommodation, facility for the treatment of mental illness, continuing care retirement community or similar entity, or place for the treatment or rehabilitation of drug addiction or alcoholism.

**"Physician"** means a **Physician** as defined in section 1861(r)(1) of the Social Security Act, as amended.

**"Plan of Care"** means a written plan prescribed by a **Licensed Health Care Practitioner** that identifies ways of meeting the **Qualified Long-Term Care Service** needs of a person who is **Chronically Ill**.

**"Policy Anniversaries," "Policy Years"** and **"Policy Months"** mean dates measured from the **Original Coverage Effective Date** of the policy. For example, if the **Original Coverage Effective Date** of the policy is May 5, 2005, the first **Policy Anniversary** is May 5, 2006; the first **Policy Year** ends May 4, 2006; and **Policy Months** start on the fifth day of each month, e.g., June 5, 2005. If the **Original Coverage Effective Date** is the 29th, 30th or 31st day of a calendar month, and a calendar month does not have that date, then that **Policy Month** shall begin on the first of the following calendar month. For purposes of this definition, a date will begin at 12:01 A.M. in the time zone in which You reside.

**"Qualified Long-Term Care Services"** means necessary diagnostic, preventive, therapeutic, curing, treating, mitigating and rehabilitative services, and **Maintenance or Personal Care** services which: (a) are required by a **Chronically Ill** individual; and (b) are provided pursuant to a **Plan of Care** prescribed by a **Licensed Health Care Practitioner**.

**"Representative"** means the person named by You or by a court of law to represent You.

**"Severe Cognitive Impairment"**: Refer to the Eligibility for the Payment of Benefits section.

**"Social Worker"** means a licensed **Social Worker**, including any **Social Worker** who has a license, certificate or similar permit to act as a **Social Worker** from a state or a body authorized by a state to issue such permits, or a person with a Masters degree in Social Work from an accredited university.

**"Terminal Illness"** means an illness or injury, which a **Physician** certifies is likely to result in a person's death within six (6) months. **"Terminally Ill"** means an individual diagnosed with a **Terminal Illness**.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 20 of 53

## Definitions of Policy Terms (Continued)

**"Total Lifetime Benefit"** means the most We will pay under this policy during Your lifetime, not including **Benefits** for **Needs Assessment**. This amount is shown on page 3 and will change if Your benefit amounts are changed.

**"United States"** means the United States and its territories.

**"We", "Us"** and **"Our"** mean Metropolitan Life Insurance Company (MetLife).

**"You"** and **"Your"** mean the **Insured** named on page 3.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 21 of 53

## Eligibility for the Payment of Benefits

**· Eligibility for Benefits**

You will be eligible for **Benefits** only if:

1.  We are given proof, satisfactory to Us, that You are **Chronically Ill**; and

2.  A **Licensed Health Care Practitioner** has certified in writing to Us, in the last twelve (12 months, that You are **Chronically Ill**; and

3.  A **Plan of Care** including the **Qualified Long-Term Care Services** You need is in place for You.

In order for certain **Benefits** to be payable, You must also satisfy an **Elimination Period** as described in this policy.

**"Chronically Ill"** means You are unable to perform, without **Substantial Assistance** from another individual, at least two (2) **Activities of Daily Living ("ADL")** for an expected period of at least ninety (90) days due to a loss of functional capacity; or You require **Substantial Supervision** to protect You from threats to health and safety due to **Severe Cognitive Impairment**.

**"Substantial Assistance"** means **Hands-On Assistance** or **Standby Assistance**. **"Hands-On Assistance"** means that You require the physical assistance of another person without which You would be unable to perform the **Activities of Daily Living**. **"Standby Assistance"** means that You require the presence of another person within arm's reach of You that is necessary to prevent, by physical intervention, injury to You while You are performing the **Activities of Daily Living**.

**"Severe Cognitive Impairment"** means a deterioration or loss in intellectual capacity that: (a) places You in jeopardy of harming Yourself or others and, therefore, You require **Substantial Supervision** by another individual; and (b) is measured by clinical evidence and standardized tests which reliably measure impairment in: (1) short or long-term memory; (2) orientation to people, places or time; and (3) deductive or abstract reasoning.

**"Substantial Supervision"** means that You require continual supervision (which may include cueing by verbal prompting, gesture or other demonstrations) by another person that is necessary to protect You from threats to Your health and safety (such as may result from wandering).

**If You Need Benefits**

You or someone acting for You may write to Us or call the toll-free number shown on page 3 to request that We determine whether You are eligible for **Benefits**.

Please refer to the Claims section of this policy for further information.

**Continuing Eligibility for Benefits**

We will reassess Your continuing eligibility for **Benefits**, based upon the criteria used to determine Your Eligibility for Benefits, at least once every twelve (12) months, but no more frequently than every thirty (30) days.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 22 of 53

## Elimination Period

**Elimination Period**

"**Elimination Period**" is the number of days after the **Original Coverage Effective Date** of this policy during which You must be **Chronically Ill** before certain **Benefits** become payable. These days need not be consecutive. The **Elimination Period** for this policy is shown on page 3. **Benefits** will not be paid for days used to satisfy the **Elimination Period.**

No **Elimination Period** is required to receive **Benefits** for **Needs Assessment**.

You only have to satisfy the **Elimination Period** once. Once You have satisfied a day of the **Elimination Period**, that day is satisfied for the life of the policy.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 23 of 53

LTC2-PREM-IL            11

## Benefit Payments

Benefit payments, other than **Needs Assessment Benefits,** will be made without regard to the actual expenses You incur.

**Conditions for Benefit Payments**

We will pay either the **Basic Daily Benefit Amount** or the **Facility Daily Benefit Amount** for each day that:

1. You have satisfied the required **Elimination Period**; and

2. You are eligible for **Benefits**; and

3. The **Total Lifetime Benefit** has not been paid.

**Basic Daily Benefits**

We will pay You the **Basic Daily Benefit Amount** for each day that:

1. You satisfy the Conditions for Benefit Payments; and

2. You are not confined in a **Facility** or You are outside the United States.

You do not need to incur charges or submit bills to receive the **Basic Daily Benefit Amount.**

**Facility Daily Benefits**

We will pay You the **Facility Daily Benefit Amount** for each day that:

1. You satisfy the Conditions for Benefit Payments; and

2. You are confined in a **Facility.**

In no event will We pay more than the **Facility Daily Benefit Amount** on any day.

**Bed Reservation Benefits**

We will pay the **Bed Reservation Benefits,** which is equal to the **Facility Daily Benefit Amount,** for up to fifty (50) days per **Policy Year.**

**"Bed Reservation Benefits"** means the **Benefits** We will pay to hold a space in a **Nursing Home, Hospice Facility** or **Assisted Living Facility,** to enable You to return to the **Facility.**

**Needs Assessment Benefits**

After You become eligible for **Benefits,** You can receive, at no extra charge to You, one **Needs Assessment** from a **Care Management Organization,** selected by Us and to whom We make direct payment. Or, You may select a **Care Management Organization** to conduct one **Needs Assessment** and We will pay the actual charges You incur up to the **Benefit Amount** for **Needs Assessment** shown on page 3.

You do not need to satisfy the **Elimination Period** for this **Benefit** to be payable. Payment of this **Benefit** will not reduce Your **Total Lifetime Benefit.**

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 24 of 53

# Contingent Benefits Upon Lapse

| | |
|---|---|
| **Contingent Benefits Upon Lapse** | We will provide limited coverage if Your policy ends because of nonpayment of premiums or Your written request to cancel the policy, following a **Substantial Premium Increase**, as described below. Note, however, that if Your policy includes a Nonforfeiture Coverage Rider shown on page 3, We will not pay **Benefits** under both that Rider and this provision. We will automatically apply the feature that will provide You with the higher adjusted **Total Lifetime Benefit**. |
| **Definitions** | **"Initial Annual Premium"** means the **Gross Annual Premium** on the **Original Coverage Effective Date** as shown on page 3 of the policy. In determining the **Initial Annual Premium** and any changes thereto, We will not take into account any premium payment mode factors or any discounts (for example, spousal discount). |
| | Any premium increase which results from a change in **Benefits** as provided under the terms of Your policy, will be added to and become part of the **Initial Annual Premium**. If You decrease Your **Benefits**, the **Initial Annual Premium** will be reduced by the amount of the decrease in Your premium. |
| | **"Substantial Premium Increase"** means a cumulative increase in Your **Initial Annual Premium** which equals or exceeds a given percentage increase over your **Initial Annual Premium**, as shown in the following table. Any premium increase which results from a change in **Benefits** requested by You, as a result of an increase in benefit amounts as provided under the terms of Your policy, or due to a change in payment arrangements, is not an increase for the purpose of determining a **Substantial Premium Increase**. |

### Substantial Premium Increase Table

| Original Issue Age* | Percent Increase Over Initial Annual Premium | Original Issue Age* | Percent Increase Over Initial Annual Premium |
|---|---|---|---|
| 29 and under | 200% | 72 | 36% |
| 30-34 | 190% | 73 | 34% |
| 35-39 | 170% | 74 | 32% |
| 40-44 | 150% | 75 | 30% |
| 45-49 | 130% | 76 | 28% |
| 50-54 | 110% | 77 | 26% |
| 55-59 | 90% | 78 | 24% |
| 60 | 70% | 79 | 22% |
| 61 | 66% | 80 | 20% |
| 62 | 62% | 81 | 19% |
| 63 | 58% | 82 | 18% |
| 64 | 54% | 83 | 17% |
| 65 | 50% | 84 | 16% |
| 66 | 48% | 85 | 15% |
| 67 | 46% | 86 | 14% |
| 68 | 44% | 87 | 13% |
| 69 | 42% | 88 | 12% |
| 70 | 40% | 89 | 11% |
| 71 | 38% | 90 and over | 10% |

\* **Original Issue Age** means Your age as shown on page 3 of the policy.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 25 of 53

LTC2-PREM-IL                    13

## Contingent Benefits Upon Lapse (Continued)

**Eligibility for Contingent Benefits Upon Lapse**

We will provide You with written notice of a **Substantial Premium Increase** at least forty-five (45) days prior to the date on which such premium increase will take effect. In this notice, We will:

1. Offer to reduce Your **Benefits**, without Your providing proof of good health, so that Your premium will not increase; and

2. Offer You the ability to receive **Contingent Nonforfeiture Coverage** as described below; and

3. Advise You that a **Lapse** at any time during the 120-day period following the due date of the increased premium will be deemed to be an election to receive **Contingent Nonforfeiture Coverage.**

**Contingent Nonforfeiture Coverage**

If **Contingent Nonforfeiture Coverage** takes effect, the same benefit amounts as those payable in effect under the policy immediately prior to the **Contingent Nonforfeiture Date** will be payable under **Contingent Nonforfeiture Coverage**, except that the **Total Lifetime Benefit** will be the greater of: (a) the sum of all premiums paid or waived under the terms of the policy; or (b) thirty (30) times the **Facility Daily Benefit Amount** (which is shown on page 3 of the policy) in effect immediately prior to the **Contingent Nonforfeiture Date**.

The total **Benefits** available under the policy after the **Contingent Nonforfeiture Date** will not be more than the remaining **Total Lifetime Benefit** (after taking into account any prior claims paid) when Your policy ended.

**When Contingent Nonforfeiture Coverage Begins**

**Contingent Nonforfeiture Coverage** takes effect on the **Contingent Nonforfeiture Date. "Contingent Nonforfeiture Date"** means: (athe date on which Your policy Lapses; or (b) the last day of the **Policy Month** in which We receive Your written request to cancel Your policy, if it is received within 120 days after the first premium due date following a **Substantial Premium Increase.**

**Limitations**

Once **Contingent Nonforfeiture Coverage** becomes effective: (1) You cannot make any changes to Your policy; and (2) all Riders under Your policy end.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 26 of 53

## Changing Benefit Amounts

While You are insured, You may change benefit amounts so long as **Nonforfeiture Coverage** is not in effect for You. As stated in the Premiums section of this policy, a change in benefit amounts may change the amount of premium for the policy.

We will send You a written notice of any change in benefit amounts and the date it takes effect.

**Benefit Increase With Proof of Good Health**

You may, at any time, ask for an increase in Your benefit amounts in writing. We will approve the request only if You provide Us, at Your expense, proof satisfactory to Us of Your good health. Increases in amounts are subject to Our underwriting rules and limits in effect at the time of Your request. If You have received any **Benefits** under this policy, the percentage increase in the **Facility Daily Benefit Amount** will be applied to the remaining **Total Lifetime Benefit**. There will be no increase in the **Needs Assessment Benefit Amount**.

The extra premium for this benefit increase will be based on Your age, the premium rates and Your **Health Rating**, at the time the increase takes effect.

The increase will take effect on the first day of the **Policy Month** which starts on or next follows the date We approve Your request. We will send You a written notice of the increase in benefit amounts, the effective date of the increase and the amount of premium due. We will require Your written acceptance before the change You requested takes effect.

**Benefit Decreases**

You may, at any time, request a decrease in Your benefit amounts in writing. Decreases in amounts are subject to Our rules and limits in effect at the time of the request. If You have received any **Benefits** under this policy, the percentage decrease in the **Facility Daily Benefit Amount** will be applied to the remaining **Total Lifetime Benefit**. There will be no decrease in the **Needs Assessment Benefit Amount**.

The decrease will take effect on the first day of the **Policy Month** which starts on or next follows the date We approve Your request. The premium will decrease as of the effective date of any decrease You requested in Your benefit amounts. The amount of the premium reduction will be computed assuming that the benefit amounts purchased last are discontinued first. We will send You a written notice of the decrease in benefit amounts, the effective date of the decrease and the amount of premium due or to be applied to future premiums. We will require Your written acceptance before the change You requested takes effect.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 27 of 53

LTC2-PREM-IL

15

## Extension of Benefits

**Extension of Benefits**

If as of the date Your policy **Lapses** or as of the date We receive a written request to cancel Your policy, You are eligible for **Benefits** and confined in a **Facility**, We will extend the payment of **Benefits** so long as, without interruption, You remain eligible for **Benefits** and confined. Subject to the **Elimination Period** and the terms of this policy, **Benefits** will be extended only until the earliest of the date:

1.  You are no longer eligible for **Benefits**; or

2.  You are no longer confined in a **Facility;** or

3.  The **Total Lifetime Benefit** has been paid.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 28 of 53

LTC2-PREM-IL                                    16

## Limitations and Exclusions

**What is Not Covered
Under This Policy**

No payment will be made for any of the following:

1.  Any injury or sickness that results from:

     a.   Any war, or act of war (whether declared or undeclared); or

     b.   Participation in a felony, riot or insurrection.

2.  Any intentionally self-inflicted injury.

There are no limitations or exclusions for pre-existing conditions, or mental and nervous disorders, including Alzheimer's Disease.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 29 of 53

## Premiums

**Premium Payment**

The premium is due and payable on the **Original Coverage Effective Date** of the policy and thereafter in accordance with the Premium Schedule that is in effect for the policy as shown on page 3. The premium must be paid in U.S. currency.

You may change the premium payment mode with Our approval.

The amount of the premium for Your initial coverage is based on Your **Original Issue Age, Health Rating** and **Discounts**, as of the **Original Coverage Effective Date** as shown on page 3.

We reserve the right to change premium rates on a class basis. The premium will not increase because You get older or Your health changes. Your premiums will change if We change Your benefit amounts as a result of Your request or as a result of an increase as provided under the terms of this policy.

**Grace Period**

You have a **Grace Period** of thirty-one (31) days to pay each premium due after the first premium. If the premium is not paid by the end of the **Grace Period**, We will send a written notice of **Lapse** of the policy to You and to any person named to receive such notice at the addresses given to Us. You have thirty-five (35) days after We mail this notice to pay the premium. The policy will stay in force during this time unless We receive a written request from You to cancel the policy. If We do not receive the premium within thirty-five (35) days of mailing the notice, the policy will then **Lapse** at the end of this thirty-five (35) day period.

If You are eligible for payment of **Benefits** prior to **Lapse** and We have not paid such **Benefits,** any unpaid premiums due will be deducted from the claim payment.

You have the right to name a person to receive notice of **Lapse** at the same time We send such notice to You. The person named will not be responsible for payment of the premium. You are responsible to inform Us of any change relating to the person named. We will inform You of Your right to change the person named at least once every two (2) years.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 30 of 53

## Premiums (Continued)

**Waiver of Premiums**

We will waive Your premium if You are receiving payment of the **Facility Daily Benefit** or the **Basic Daily Benefit**. If this requirement is initially met on the first day of a **Calendar Month**, waiver of premium will begin on that date. If this requirement is initially met on a date other than the first day of a **Calendar Month**, waiver of premium will begin on the first day of the next **Calendar Month**.

Waiver of premium will end when You are no longer eligible for **Benefits**. If waiver of premium ends of the first day of a **Calendar Month**, payment of premium must resume on that date. If waiver of premium ends on a day other than the first day of a **Calendar Month**, payment of premium must resume the day of the next **Calendar Month.**

If You selected a premium payment mode other than monthly, You will be considered to be on a monthly premium payment mode while premiums are waived. You may change Your payment mode once premiums are no longer waived.

**Reinstatement**

If Your policy **Lapses**, We will reinstate Your policy back to the date it **Lapsed**, if within twelve (12) months of that date You or someone acting for You:

1. Request reinstatement; and

2. Submit proof of good health, acceptable to Us, at Your expense; and

3. Pay all past due premiums to Us, if We approve Your request for reinstatement.

If We reinstate Your policy, Your premium will be what it would have been if Your coverage had not **Lapsed**.

**Reinstatement for Cognitive Impairment or Loss of Functional Capacity**

If Your policy **Lapses**, We will reinstate Your policy back to the date it **Lapsed**, without proof of Your good health, if within six (6) months of that date, You or someone acting for You:

1. Request reinstatement; and

2. Submit proof acceptable to Us that You had a **Severe Cognitive Impairment** or loss of functional capacity before the policy **Lapsed**; and

3. Pay all past due premiums to Us, if We approve Your request for reinstatement.

The standard of proof We will use will be no more restrictive than that described in the Eligibility for the Payment of Benefits section.

If We reinstate Your policy, Your premium will be what it would have been if Your coverage had not **Lapsed**.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 31 of 53

## Claims

**Notice of Claim**

You must provide Us with notice of claim within twenty (20) days after the beginning of any loss covered by the policy, or as soon as reasonably possible.

**Claim Forms**

When We receive Your notice of claim, We will provide You with any needed claim form(s). Your notice of claim must include Your name, the Policy Number, the type of care, and an address to which the claim form(s) should be sent. If We do not provide You with any needed claim forms within fifteen (15) days after We receive Your notice of claim, Our claim form requirements will be satisfied if You provide Us with written proof of the date(s) on which You believe that You were eligible for **Benefits**, and if necessary the dates on which You were confined in a **Facility.**

**Proof of Claim**

We will pay **Benefits** only if We determine that You are eligible for **Benefits,** have satisfied any required **Elimination Period** and We receive Your completed claim form(s), if needed, and if applicable, written proof satisfactory to Us that You were confined in a **Facility**.

You must submit written proof of claim to Us, at the address stated on the claim form We provide You, no later than ninety (90) days after the end of the calendar year for which You are requesting **Benefits**. Failure to submit proof of claim within this time limit will result in a claim denial unless it is shown that:

1. It was not reasonably possible to provide proof of claim within the time period; and

2. Proof of claim was submitted as soon as reasonably possible and in no event, except in the absence of Your legal capacity, later than one year from the time proof is otherwise required.

To help Us determine whether You are eligible for **Benefits** and the benefit amounts We will pay:

1. We or a person We name may contact You, Your **Representative**, Your **Physician** or other persons familiar with Your condition; and

2. We may require that You provide Us, or a person We name, with access to Your medical records to obtain information about Your condition. We may not be able to determine Your eligibility for **Benefits** or approve a claim for **Benefits** if We do not have access to these records.

3. We will notify You within thirty (30) days after receipt of Your claim if We have not received sufficient documentation for proof of Your claim.

**Physical Examination**

We have the right to have You examined by a healthcare professional at Our expense and to conduct an on-site assessment. We may not be able to determine Your eligibility for **Benefits** or to approve a claim for **Benefits** if You do not consent to an on-site assessment, if such assessment is needed.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 32 of 53

## Claims (Continued)

**Notice of Approval or Denial**

We will send You a written notice of Our decision to approve or deny Your eligibility for **Benefits** or a claim as soon as reasonably possible. In no event will We send this notice later than ten (10) working days after We have received all the information We need to assess Your eligibility for **Benefits** or claim. If You are not eligible for **Benefits** or We do not approve Your claim, Our notice will state the reasons for denial.

**Appeals of Claims Denials**

If We deny Your eligibility for **Benefits** or Your claim, in whole or in part, We will review Our decision if You or Your **Representative**:

* Request in writing that We review Our decision; and

* Send this request to Us within sixty (60) days after You receive Our denial.

Within sixty (60) days of the date We receive Your request, We will review the denial and make a final decision. Our final decision will be in writing, and if it is a denial, it will include Our specific reasons for the denial and make available all information directly relating to such denial.

**Timely Payment of Claims**

If We approve Your claim, We will immediately pay the **Benefits** under the terms of this policy. All **Benefits** will be paid to You. If We fail to pay **Benefits** within thirty (30) days after We receive proof of claim satisfactory to Us, We will pay interest on that amount, at the rate of nine percent (9%) per annum, from the thirtieth (30th) day that **Benefits** are due and unpaid, to the actual date of the late payment. Any required interest payments shall be made within thirty (30) days after the payment. Unless assigned, any unpaid **Benefits** due to You at Your death will be paid in accordance with the Facility of Payment provision.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 33 of 53

## General Provisions

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 34 of 53

| | |
|---|---|
| **The Contract** | This policy, with any Riders, endorsements and written application attached, make up the entire contract. |
| | The provisions of this policy must be read as a whole. For example, the Limitations and Exclusions apply to all **Benefits** in the policy. |
| **Assignment; No Cash Value; Premium Refunds** | The **Benefits** payable under the policy may not be assigned. |
| | The policy has no cash surrender value or other money that can be paid, Assigned, borrowed, or pledged as collateral for a loan. |
| | Any refund of unearned premiums due at Your death or on cancellation of this policy will be paid to You, or to Your estate at Your death. Any other refund of unearned premiums shall be, at Our option, applied against future premiums or applied to increase future **Benefits**. |
| **Refund to Us for Overpayment of Benefits** | If at any time We determine that the total **Benefits** paid to You was more than the total **Benefits** due, We have the right to recover the excess amount from You. Total **Benefits** includes any overpayment resulting from Your subsequent recovery of other insurance proceeds or litigation damages for charges incurred for which We have already paid **Benefits** to You. |
| | If at any time We determine that the total **Benefits** paid to any other person or entity was more than the total **Benefits** due, We have the right to recover the excess amount from that person or entity. |
| | However, We may not recover any **Benefit** payments paid to You or on Your behalf in the event that We rescind the policy. |
| **Facility of Payment** | Any amounts due to You at Your death, as provided in the Payment of Claims provision or Premium Refunds provision, that is not more than $1,000, may be made to anyone related to You by blood or marriage whom We find entitled to payment. Any payment made by Us in good faith will fully discharge Us to the extent of the payment. |
| **Limitation on Representative's or Other Person's Authority** | No sales representative, agent, broker or other person except Our President, Secretary or a Vice-President may: (a) make or change any contract of insurance; or (b) change or waive any of the terms of this policy. Any change or waiver must be in writing and signed by Our President, Secretary or a Vice-President. |
| **Statements Made By You Relating to Insurability** | Any statement made by You in the application will be deemed a representation and not a warranty. No such statement made by You which relates to insurability can be used by Us to: (a) contest the validity of Your policy; or (b) deny an otherwise valid claim, unless the application was signed by You, and a copy of the application has been attached to the policy. |

## General Provisions (Continued)

If Your policy has been in force for less than six (6) months, We may contest the validity of Your policy or deny an otherwise valid claim upon a showing of misrepresentation by You that was material to the acceptance for coverage.

If Your policy has been in force for at least six (6) months but less than two (2) years, We may contest the validity of Your policy or deny an otherwise valid claim upon a showing of misrepresentation by You that is both material to the acceptance for coverage and which pertains to the condition for which **Benefits** are sought.

If Your policy has been in force for two (2) years or more, no misstatements, except fraudulent misstatements made by You in the application, shall be used to void the policy or deny an otherwise valid claim.

**Misstatement of Age** — If Your date of birth is not correct as shown on Your application, an adjustment in premium and/or amounts of coverage may be made, at Our option, based on the correct information.

**Legal Actions** — No legal action may be brought until sixty (60) days after written proof of claim has been given. No such action may be brought after six (6) years from the time written proof of claim is required to be given.

**Termination of Policy** — Your policy will remain in force and will not terminate because of Your age or deterioration in Your mental or physical health. Your policy will only terminate upon:

1. Our receipt of a written request to cancel the policy (the policy will terminate on the last day of the **Policy Month** in which such request was received, subject to any **Nonforfeiture Coverage**);

2. Payment of Your **Total Lifetime Benefit** under the policy;

3. Policy **Lapse** (subject to any **Nonforfeiture Coverage**); or

4. Your death.

**Conformity With State Statutes** — Any provision in this policy which, on the **Original Coverage Effective Date** of the policy, conflicts with the laws of the state in which You reside on that date, is amended to meet the minimum requirements of such laws.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 35 of 53

## General Provisions (Continued)

**Tax Note**

Since **Benefits** paid under this policy are made without regard to actual charges You incur, part of the **Benefits** could be considered taxable income if they exceed the daily benefit amount limit prescribed by U.S. tax law (referred to as a "Per Diem" limit). This "Per Diem" limit is indexed for inflation. You should consult with Your tax advisor.

**Notice**

When You write to Us, please give Us Your name, address and Policy Number. Please inform Us promptly of any changes. We will write to You at Your last known address.

Checks, drafts or money orders may be drawn on a U.S. bank to the order of Metropolitan Life Insurance Company (or "MetLife"). They are received subject to the condition that they may be handled for collection in accordance with the practice of the collecting bank or banks. If We do not receive the full amount of any check, draft or money order, it will not constitute payment. All payments are to be made in U.S. currency. We may refuse to accept any payments made in a manner that applicable law requires Us to refuse (such as any large cash payment made without information that We are required by law to obtain).

You may write to Us at:     Metropolitan Life Insurance Company
P O Box 990028
Hartford, CT 06199-0028

Copy of application is attached. Riders and endorsements, if any, follow.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 36 of 53

## METROPOLITAN LIFE INSURANCE COMPANY

### Access to Discounts for Services Endorsement

The following provision is added to the General Provisions section of the policy:

**Access to
Discounts for
Services**

You will receive access to discounts for services, when available

**In all other respects, the provisions and conditions of the policy remain the same. This endorsement is subject to the terms and provisions of the policy. It is to be attached to and made a part of Your policy.**

**This endorsement is effective as of the Original Coverage Effective Date shown on the Schedule of Benefits of Your Policy.**

Signed for Metropolitan Life Insurance Company

*Jeffrey A. Welikson*

Jeffrey A. Welikson
Senior Vice President and Secretary

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 37 of 53

LTC2-ADS

**METROPOLITAN LIFE INSURANCE COMPANY**

## 5% Automatic Compound Inflation Protection Rider

**This Rider provides for an automatic benefit increase of five percent (5%) per year, compounded annually.**

This Rider is part of the policy to which it is attached if it is referred to on page 3 of the policy. This Rider provides coverage as described below.

| | |
|---|---|
| **Automatic Compound Inflation Benefit** | Your benefit amounts will automatically increase each year with no corresponding increase in premium. The amounts of the increases are equal to five percent (5%) of the benefit amounts in effect at the end of the prior **Policy Year**. |

If You have received any **Benefits** under the policy, then with regard to the **Total Lifetime Benefit**, **Needs Assessment**, and if applicable, **Transition Expense Allowance** and **Informal Caregiver Training Benefit Amounts**, the five percent (5%) increase will be applied to the remaining amounts.

The benefit amount increases will occur on each **Policy Anniversary** for the lifetime of Your policy, even when You are receiving **Benefits**. These increases will be made without regard to Your age, claim status, claim history, health, or the length of time You have been covered under the policy.

**Your premium is not expected to increase as a result of the benefit amount increases provided by this Rider. However, We reserve the right to adjust premiums on a class basis.**

ELECTRONICALLY FILED
4/20/2018 4:04 PM
2018-L-004153
CALENDAR
PAGE

**Limitations**  No increases will be made if nonforfeiture coverage is in effect under the policy.

**Effective Date of this Rider**  This Rider takes effect on the Rider Effective Date shown below. If this Rider is in effect, it will be set forth on Your Schedule of Benefits (page 3 of the policy).

**Termination of this Rider**  This Rider will end on the earlier of:

1. the last day of the **Policy Month** in which We receive Your written request to end this Rider. In this case, We will send You a revised Schedule of Benefits (page 3 of the policy) to be attached to Your policy; or

2. the date on which the policy ends.

**Premium for this Rider**  The premium for this Rider is shown in the Premium Schedule on page 3 of the policy. The premium for this Rider will terminate as of the date this Rider ends. The same conditions that apply to the premium for the policy will apply to the premium for this Rider.

**In all other respects, the provisions and conditions of the policy remain the same. This Rider is subject to the terms and provisions of the policy. It is to be attached to and made a part of Your policy.**

Signed for Metropolitan Life Insurance Company

*Jeffrey A. Welikson*

**Jeffrey A. Welikson**
**Senior Vice-President and Secretary**                              **Rider Effective Date: 7/12/2006**

LTC2-5AIP

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 39 of 53

# EXHIBIT B

Metropolitan Life Insurance Company
P. O. Box 937
Westport, CT 06881-0937
Toll-Free Number: 1-888-565-3761

## SCHEDULE OF BENEFITS

**AGENT COPY**

### INSURED
Allan S Brodsky

### CURRENT COVERAGE: EFFECTIVE DATE July 12, 2006
### (REPLACES ANY PREVIOUS SCHEDULE OF BENEFITS)

| | |
|---|---|
| Original Coverage Effective Date | July 12, 2006 |
| Original Issue Age | 60 |
| Policy Number | 14363-11111 |
| Plan Number | 14363 |
| Elimination Period | 20 days |
| Benefit Period | 2,555 Days 7 Years |
| TOTAL LIFETIME BENEFIT (does not reflect claims paid or payable) | $1,022,000 |

**BENEFIT AMOUNTS**

| | |
|---|---|
| Facility Daily Benefit Amount | $400 |
| Basic Daily Benefit Amount | $400 |
| Needs Assessment | $275/lifetime |

**Health Rating:** Standard
**Discounts:** Spousal Discount
Spousal Discount applies as long as associated policies do not lapse.

### PREMIUM SCHEDULE

Gross Annual Premium (includes Riders and Health Rating; does not include Discounts, if any):    $19,350.36

| COVERAGE | ANNUAL PREMIUM* |
|---|---|
| | (Includes Health Rating and Discounts) |
| Base Coverage | $   6042.65 |
| 5% Automatic Compound Inflation Protection Rider | $   7502.60 |
| Total Annual Premium with discounts applied | $ 13545.25 |
| Annual Premium Amount* | $ 13545.25 |

*If you pay premiums more frequently than annually, an additional cost has been included. Please refer to Your application, "How You Want to Pay Premiums", to explain the basis for any additional charge.

LTC2-PREM-IL                                3

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 41 of 53

# EXHIBIT C

# MetLife®

Metropolitan Life Insurance Company
New York, NY

**METROPOLITAN LIFE INSURANCE COMPANY**
**P.O. BOX 937**
**WESTPORT, CT 06881-0937**
**1-888-565-3761**

**LONG-TERM CARE INSURANCE**
**OUTLINE OF COVERAGE**
**POLICY FORM LTC2-PREM-IL**

> **THE POLICY IS NOT APPROVED FOR MEDICAID ASSET PROTECTION UNDER THE ILLINOIS LONG-TERM CARE PARTNERSHIP PROGRAM. HOWEVER, THE POLICY IS AN APPROVED TRADITIONAL LONG-TERM CARE CONTRACT UNDER STATE INSURANCE REGULATIONS. FOR INFORMATION ABOUT POLICIES APPROVED UNDER THE ILLINOIS LONG-TERM CARE PARTNERSHIP PROGRAM, CALL THE SENIOR HELPLINE AT THE DEPARTMENT OF AGING AT 1-800-252-8966.**

**NOTICE TO BUYER: THE POLICY MAY NOT COVER ALL OF THE COSTS ASSOCIATED WITH LONG-TERM CARE INCURRED BY THE BUYER DURING THE PERIOD OF COVERAGE. THE BUYER IS ADVISED TO REVIEW CAREFULLY ALL POLICY LIMITATIONS.**

**CAUTION:** The issuance of the long-term care insurance policy will be based upon Your responses to the questions on Your application. A copy of Your application will be attached to Your policy. If Your answers are incorrect or untrue, Metropolitan Life Insurance Company ("MetLife") may have the right to deny benefits or rescind Your policy. The best time to clear up any questions is now, before a claim arises. If, for any reason, any of Your answers are incorrect, contact MetLife at this address: P.O. Box 937, Westport, CT 06881-0937.

1. The policy is an individual policy of insurance.

2. **PURPOSE OF OUTLINE OF COVERAGE.** This outline of coverage provides a very brief description of the important features of the policy. You should compare this outline of coverage to outlines of coverage for other policies available to You. This is not an insurance contract, but only a summary of coverage. Only the individual policy contains governing contractual provisions. This means that the policy sets forth in detail the rights and obligations of both You and MetLife. Therefore, if You purchase this coverage or any other coverage, it is important that You READ YOUR POLICY CAREFULLY!

3. **FEDERAL TAX CONSEQUENCES.** The policy is intended to be a federally tax-qualified long-term care insurance contract under Section 7702B(b) of the Internal Revenue Code of 1986, as amended.

   Since Benefits under the policy are paid without regard to the actual charges You incur, part of the Benefits could be considered taxable income if they exceed the daily benefit amount limit prescribed by U.S. tax law (referred to as a "Per Diem" limit). This "Per Diem" limit is indexed for inflation. You should consult with Your tax advisor.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 52 of 55

**MetLife®**

Metropolitan Life Insurance Company
New York, NY

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 43 of 53

4.  **TERMS UNDER WHICH THE POLICY MAY BE CONTINUED IN-FORCE OR DISCONTINUED.**

    a.  RENEWABILITY. THE POLICY IS GUARANTEED RENEWABLE. This means You have the right, subject to the terms of the policy, to continue the policy as long as You pay Your premiums on time. MetLife cannot change any of the terms of the policy without Your consent, except that, in the future, MetLife MAY INCREASE THE PREMIUM YOU PAY.

    b.  WAIVER OF PREMIUM. We will waive Your premium starting on the first day of the Policy Month which starts on or next follows the date on which You are receiving payment of the Facility Daily Benefit or the Basic Daily Benefit. You must resume payment of Your premium starting on the first day of the Policy Month which starts on or next follows the date on which You are no longer eligible for Benefits.

5.  **TERMS UNDER WHICH THE COMPANY MAY CHANGE PREMIUMS. We reserve the right to change premium rates, subject to applicable state Insurance Department approval. Any such change in premium rates will apply to all policies in the same class as Yours in the state where Your policy was issued. The premium will not increase because You get older or Your health changes. However, Your premiums will change if We change Your benefit amounts or coverage as a result of Your request or as a result of an increase as provided under the terms of the policy.**

6.  **TERMS UNDER WHICH THE POLICY MAY BE RETURNED AND PREMIUM REFUNDED.**

    a.  You can return the policy to Us, or to the sales representative from whom You bought it within thirty (30) days from the date You receive it. If so returned, the policy will be void from the beginning. We will refund any premium paid within thirty (30) days after We receive the returned policy.

    b.  We will refund any unearned premium due at Your death or on cancellation of the policy to You, or to Your estate at Your death. If You purchase the Return of Premium Rider, any refund of unearned premium will be paid in accordance with the terms of that Rider.

7.  **THIS IS NOT MEDICARE SUPPLEMENT COVERAGE.** If You are eligible for Medicare, review the Medicare Supplement Buyer's Guide available from MetLife.

    Neither MetLife nor its agents represent Medicare, the federal government, or any state government.

8.  **LONG-TERM CARE INSURANCE COVERAGE.** Policies of this category are designed to provide coverage for one or more necessary or medically necessary diagnostic, preventive, therapeutic, rehabilitative, maintenance, or personal care services, provided in a setting other than an acute care unit of a hospital, such as in a Nursing Home, in the community or in the home.

    The policy provides coverage in the form of a fixed dollar (disability type) benefit for covered long-term care conditions, subject to policy limitations and Elimination Period requirements. This means that Benefit payments, other than Needs Assessment Benefits, will be made without regard to the actual expenses You incur provided You are eligible for benefits.

**MetLife®**

Metropolitan Life Insurance Company
New York, NY

9. **BENEFITS PROVIDED BY THE POLICY** (after You have satisfied the Elimination Period described below, and We have determined that You are eligible for Benefits):

**Benefit Amounts**

| | |
|---|---|
| Facility | $ _____ |
| Basic | $ _____ |
| **Total Lifetime Benefit** | $ _____ |

**Elimination Period**    ☐ 20 days    ☐ 45 days    ☐ 100 days

"Elimination Period" is the number of days after the Original Coverage Effective Date of the policy during which You must be Chronically Ill before certain Benefits become payable. These days need not be consecutive.

## ELIGIBILITY FOR THE PAYMENT OF BENEFITS.

You will be eligible for Benefits only if:

1. we are given proof, satisfactory to Us, that You are Chronically Ill; and
2. a Licensed Health Care Practitioner has certified in writing to Us, in the last 12 months, that You are Chronically Ill; and
3. a Plan of Care including the Qualified Long-Term Care Services You need is in place for You.

In order for certain Benefits to be payable, You must also satisfy the Elimination Period.

## IMPORTANT DEFINITIONS

The **"Activities of Daily Living"** (ADL) are: bathing, dressing, transferring, toileting, continence and eating.

**"Chronically Ill"** means You are unable to perform, without Substantial Assistance from another individual, at least two Activities of Daily Living for an expected period of at least ninety (90) days due to a loss of functional capacity; or You require Substantial Supervision to protect You from threats to health and safety due to Severe Cognitive Impairment.

**"Plan of Care"** means a written plan prescribed by a Licensed Health Care Practitioner that identifies ways of meeting the Qualified Long-Term Care Service needs of a person who is Chronically Ill.

**"Qualified Long-Term Care Services"** means necessary diagnostic, preventive, therapeutic, curing, treating, mitigating and rehabilitative services, and Maintenance or Personal Care services which: (a) are required by a Chronically Ill individual; and (b) are provided pursuant to a Plan of Care prescribed by a Licensed Health Care Practitioner.

**"Severe Cognitive Impairment"** means a deterioration or loss in intellectual capacity that: (a) places You in jeopardy of harming Yourself or others and, therefore, You require Substantial Supervision by another individual; and (b) is measured by clinical evidence and standardized tests which reliably measure impairment in: (1) short or long term memory; (2) orientation to people, places or time; and (3) deductive or abstract reasoning.

**"Substantial Assistance"** means Hands-On Assistance or Standby Assistance. "Hands-On Assistance" means that You require the physical assistance of another person without which You would be unable to perform the Activities of Daily Living. "Standby Assistance" means that You require the presence of another person within arm's reach of You that is necessary to prevent, by physical intervention, injury to You while You are performing the Activities of Daily Living.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 50 of 59

---

**MetLife®**

Metropolitan Life Insurance Company
New York, NY

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 45 of 53

"**Substantial Supervision**" means that You require continual supervision (which may include cueing by verbal prompting, gesture or other demonstrations) by another person that is necessary to protect You from threats to Your health and safety (such as may result from wandering).

## BENEFIT PAYMENTS

Benefit payments other than Needs Assessment Benefits will be made without regard to the actual expenses You incur. We will pay either the Basic Daily Benefit Amount or the Facility Daily Benefit Amount for each day that: (1) You have satisfied the required Elimination Period; and (2) You are eligible for Benefits; and (3) the Total Lifetime Benefit has not been paid.

**A. BASIC DAILY BENEFITS.** We will pay You the Basic Daily Benefit Amount for each day that: (1) You satisfy the Conditions for Benefit Payments; and (2) You are not confined in a Facility or You are outside the United States. You do not need to incur charges or submit bills to receive the Basic Daily Benefit Amount.

If You are outside the United States and satisfy the Conditions for Benefit Payments, We will pay the Basic Daily Benefit.

**B. FACILITY DAILY BENEFITS.** We will pay You the Facility Daily Benefit Amount for each day that: (1) You satisfy the Conditions for Benefit Payments; and (2) You are confined in a Facility.

In no event will We pay more than the Facility Daily Benefit Amount on any day.

**C. BED RESERVATION BENEFITS.** We will pay the Bed Reservation Benefit, which is equal to the Facility Daily Benefit Amount, for up to fifty (50) days per Policy Year.

**D. NEEDS ASSESSMENT BENEFITS.** After You become eligible for Benefits, You can receive, at no extra charge to You, one Needs Assessment from a Care Management Organization, selected by Us and to whom We make direct payment. Or, You may select a Care Management Organization to conduct one Needs Assessment and We will pay the actual charges You incur up to $275. You do not need to satisfy the Elimination Period for this Benefit to be payable. Payment of this Benefit will not reduce Your Total Lifetime Benefit.

## OPTIONAL RIDERS

The Riders shown below are available with Your policy. You have selected those Riders indicated by a (check mark). The provisions of these Riders are highlighted below. Please refer to the actual Rider for full details. The term Covered Partner, as used below, means Your spouse or Domestic Partner named on Your application if You and Your spouse or Domestic Partner select the Paid-Up Survivorship Rider or the Shared Care Rider.

☐ **A. FUTURE PURCHASE RIDER.** (See Section 11) This Rider will provide You with an automatic increase in Your benefit amounts as of each Policy Anniversary, unless You give Us written notice of rejection prior to that Policy Anniversary. If You reject the automatic increase two (2) times in a row, You will no longer receive these increases automatically. There will be an additional premium for each increase in Your benefit amounts. The additional premium will be based on Your age and the premium rates at the time the increase takes effect. If no Benefits have been paid, each increase is equal to at least five percent (5%) of the benefit amounts in effect at the end of the prior Policy Year. No increases will be made if You are eligible for Benefits.

# MetLife®

**Metropolitan Life Insurance Company**
New York, NY

☐ **B. 5% AUTOMATIC COMPOUND INFLATION PROTECTION RIDER.** (See Section 11) This Rider will provide You with an automatic increase in Your benefit amounts each year with no corresponding increase in premium. If no Benefits have been paid, the amounts of the increases are equal to five percent (5%) of the benefit amounts in effect at the end of the prior Policy Year.

☐ **C. 5% AUTOMATIC SIMPLE INFLATION PROTECTION RIDER.** (See Section 11) This Rider will provide You with an automatic increase in Your benefit amounts each year with no corresponding increase in premium. If no Benefits have been paid, and no changes have been made to Your benefit amounts pursuant to Your request, the amounts of the increases are equal to five percent (5%) of the benefit amounts on the Original Coverage Effective Date as shown on page 3 of the policy.

☐ **D. NONFORFEITURE COVERAGE RIDER.** This Rider provides limited coverage if this Rider has been in effect for at least three (3) Policy Years and is in effect when Your policy ends because of nonpayment of premiums or Your written request to cancel the policy. The same benefit amounts as those payable under the policy in effect immediately prior to the Nonforfeiture Date will be payable under this Rider, except that the Total Lifetime Benefit will be the greater of: (1) the sum of all premiums paid or waived for coverage during the time this Rider is in effect; or (2) thirty (30) times the Facility Daily Benefit Amount in effect immediately prior to the Nonforfeiture Date. The total Benefits paid under this Rider will not be more than the remaining Total Lifetime Benefit when Your policy Lapsed or ended due to Your request to cancel the policy. Note, however, that the policy includes a Contingent Benefits Upon Lapse provision. We will not pay Benefits under both this Rider and the Contingent Benefits Upon Lapse provision of Your policy. We will automatically apply the feature that will provide You with the higher adjusted Total Lifetime Benefit.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 46 of 53

E. **PAID-UP SURVIVORSHIP RIDER.** Your policy will be Paid-Up for the Coverage in effect as of the date Your Covered Partner's policy terminates due to Your Covered Partner's death. "Paid-Up" means that no further premiums are payable for Your policy, but the Coverage remains in effect. However, You must pay any premium increase which results from a change in benefits under the terms of Your policy after Your policy is Paid-Up under this Rider.

In order for Your policy to become Paid-Up under this Rider, ALL of the following conditions must be met:

1. Both You and Your Covered Partner must each have a long-term care insurance policy which includes a Paid-Up Survivorship Rider in effect with Us for at least ten (10) consecutive Policy Years and both of these Riders must be in effect on the date Your Covered Partner dies; and

2. Neither You nor Your Covered Partner were eligible for Benefits during the first ten (10) Policy Years that the Paid-Up Survivorship Rider is in effect for Your policy and for Your Covered Partner's policy; and

3. You must provide Us with written proof, satisfactory to Us, of the death of Your Covered Partner.

☐ **F. RETURN OF PREMIUM RIDER.** This Rider provides for a return of premium if this Rider has been in effect for at least ten (10) Policy years and is in effect on the date of Your death. The amount paid will be equal to the total premiums paid minus any Benefits paid or payable by Us.

---

**MetLife®**

Metropolitan Life Insurance Company
New York, NY

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 47 of 53

☐ **G. SHARED CARE RIDER.** This Rider allows Your Covered Partner to receive certain Benefits under Your policy after the Total Lifetime Benefit under Your Covered Partner's policy has been exhausted. When Your Covered Partner dies, the remaining Total Lifetime Benefit, if any, from Your Covered Partner's policy will be added to the remaining Total Lifetime Benefit of Your policy. Coverage for both You and Your Covered Partner must be identical in all respects, for the entire time both policies are in effect up to the time Benefits become payable under this Rider. Increases in benefit amounts under the Future Purchase Rider, if applicable, for one Covered Partner while the other Covered Partner is eligible for Benefits will not be taken into account in determining whether the coverage is identical under both policies. Any other change in Benefits to one Covered Partner's coverage that is not made to the other Covered Partner's coverage will cause the Shared Care Rider to end.

☐ **H. TEN YEAR PREMIUM PAYMENT RIDER.** This Rider provides that the premium for the coverage purchased on Your Original Coverage Effective Date to become Paid-Up on the tenth (10th) Policy Anniversary. Any premium increases as a result of a change in benefits under the terms of the policy will be treated separately for purposes of this Rider. "Paid-Up" means no further premiums are payable, but the policy remains in effect. Note that if You end this Rider before Your policy is Paid-Up, You will not receive any offset, adjustment or refund of the accelerated premium paid under this Rider upon switching to the standard method of premium payment.

☐ **I. PAID-UP PREMIUMS RIDER.** This Rider provides the premium for the coverage purchased on Your Original Coverage Effective Date to be Paid- Up at the later of the Policy Anniversary on or after Your 65th birthday or on the tenth (10th) Policy Anniversary. Any premium increase, which results from a change in benefits under the terms of the policy, will be treated separately for purposes of this Rider. "Paid-Up" means no further premiums are payable, but the policy remains in effect. Note that if You end this Rider before Your policy is Paid-Up, You will not receive any offset, adjustment or refund of the accelerated premium paid under this Rider upon switching to the standard method of premium payment.

☐ **J. DOUBLE PAY FIRST YEAR RIDER.** This Rider provides that You pay two (2) times the premium amount that would otherwise be due for your coverage during the first Policy Year that Your coverage is in effect. Then, the premium amount due in subsequent Policy Years will be reduced. The premium amounts due in the first Policy Year and thereafter will be shown in the Premium Schedule on page 3 of Your policy. Note that if You end this Rider before the end of the first Policy Year and Your policy remains in effect, You will not receive any offset, adjustment or refund of the accelerated premium paid under this Rider upon switching to the standard method of premium payment.

☐ **K. REDUCED PAY AT AGE 65 RIDER.** This Rider provides that You pay an increased premium amount than would otherwise be due for Your coverage prior to age 65. Then, on the Policy Anniversary on or after Your 65th birthday, the premium for Your coverage will be reduced to 50% of the premium that You paid prior to age 65. The premium amounts due in the first Policy Year and thereafter will be shown in the Premium Schedule on page 3 of Your policy. Note that if You end this Rider before Your 65th birthday and Your policy remains in effect, You will not receive any offset, adjustment or refund of the accelerated premium paid under this Rider upon switching to the standard method of premium payment.

**MetLife®**

Metropolitan Life Insurance Company
New York, NY

**10. LIMITATIONS AND EXCLUSIONS.** No payment will be made for any of the following:

  a. Any injury or sickness that results from:
    1. any war, or act of war (whether declared or undeclared); or
    2. participation in a felony, riot or insurrection.
  b. Any intentionally self-inflicted injury.

Once You are accepted for coverage, there are no limitations or exclusions for pre-existing conditions, or mental and nervous disorders, including Alzheimer's Disease.

**THE POLICY MAY NOT COVER ALL THE EXPENSES ASSOCIATED WITH YOUR LONG-TERM CARE NEEDS.**

**11. RELATIONSHIP OF COST OF CARE AND BENEFITS.** Because the costs of long-term care services will likely increase over time, You should consider whether and how the Benefits of the policy may be adjusted.

**A. INFLATION PROTECTION.** You will have the opportunity to purchase one of two (2) Inflation Protection Riders. If You choose one of these Riders, the following increases are made without regard to Your age, claim status, claim history, health, or the length of time You have been covered under the policy. We reserve the right to adjust premium rates, on a class basis, for these Inflation Protection options. You have the choice of:

— **5% Automatic Compound Inflation Protection rider.** This Rider will provide You with an automatic increase in Your benefit amounts each year with no corresponding increase in premium. If no Benefits have been paid, the amounts of the increases are equal to five percent (5%) of the benefit amounts in effect at the end of the prior Policy Year; or

— **5% Automatic Simple Inflation Protection rider.** This Rider will provide You with an automatic increase in Your benefit amounts each year with no corresponding increase in premium. If no Benefits have been paid and no changes have been made to Your benefit Amounts pursuant to Your request, the amounts of the increases are equal to five percent (5%) of the benefit amounts on the Original Coverage Effective Date as shown on page 3 of the policy.

The following graph compares the benefits and premiums between a policy with the 5% Automatic Compound Inflation Protection Rider and a policy with the 5% Automatic Simple Inflation Protection Rider and a policy without either Rider. For purposes of this graph, the premiums shown assume a policy issued to an individual who is age 65, has chosen a $100 Facility Daily Benefit Amount, a $50 Basic Daily Benefit Amount, a 5 year Total Lifetime Benefit, and a 45 day Elimination Period.

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 48 of 53

**MetLife®**

Metropolitan Life Insurance Company
New York, NY



Comparison of Long-Term Care Benefit Levels

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 49 of 53

**E. FUTURE PURCHASE RIDER.** This Rider will provide you with an automatic increase in Your benefit amounts as of each Policy Anniversary, unless You give Us written notice of rejection prior to that Policy Anniversary. If You reject the automatic increase two (2) times in a row, You will no longer receive these increases automatically. There will be an additional premium for each increase in Your benefit amounts. The additional premium will be based on Your age and the premium rates at the time the increase takes effect. If no Benefits have been paid, each increase is equal to at least five percent (5%) of the benefit amounts in the prior Policy Year. No increases will be made if You are eligible for Benefits.

**C. BENEFIT INCREASE WITH PROOF OF GOOD HEALTH.** You may, at any time, ask for an increase in Your benefit amounts in writing. Increases in amounts are subject to proof of Your good health, satisfactory to Us, and Our underwriting rules and limits in effect at the time of Your request. The extra premium for the increase will be based on Your age, premium rates and Health Rating, at the time the increase takes effect.

**D. BENEFIT DECREASES.** You may, at any time, request a decrease in Your benefit amounts in writing. Decreases in amounts are subject to Our rules and limits in effect at the time of the request.

**12. ALZHEIMER'S DISEASE AND OTHER ORGANIC BRAIN DISORDERS.** Once You are accepted for coverage, the policy provides coverage for insureds clinically diagnosed as having Alzheimer's Disease or related degenerative and dementing illnesses, under the same terms as coverage for any other condition that qualifies You as Chronically Ill.

**13. ANNUAL PREMIUMS**

(Premiums appear next to Riders selected.)

| | |
|---|---|
| Premier Policy | $ _____ |
| Future Purchase Rider | $ _____ |
| 5% Automatic Compound Inflation Protection Rider | $ _____ |

**PREMIER**

LTC2-OC-PREM-IL                    Outline p. 8                    LTC01830 (0105)

**MetLife®**                          Metropolitan Life Insurance Company
                                      New York, NY

5% Automatic Simple
Inflation Protection Rider            $ _____

Nonforfeiture Coverage Rider          $ _____

Paid-Up Survivorship Rider            $ _____

Return of Premium Rider               $ _____

Shared Care Rider                     $ _____

Ten Year Premium Payment Rider        $ _____

Paid-Up Premiums Rider                $ _____

Reduced Pay at Age 65 Rider           $ _____

Double Pay First Year Rider           $ _____

Total Annual Premium                  $ _____ *

*This premium does not reflect any flexible premium payment riders that You may select.

Tax Note: The Ten-Year Premium Payment Rider, the Paid-Up Premiums Rider, the Reduced Pay at Age 65 Rider or the Double Pay First Year Rider provide an accelerated premium payment schedule that would result in either: (a) Your coverage being paid-up; or (b) Your premium being reduced in subsequent years or at age 65. You should be aware that the payment of premiums more rapidly than under a standard payment plan may result in a loss of tax deductions to which You would otherwise be entitled under the federal income tax law and the income tax laws of certain states. You should consult Your tax advisor prior to selecting an accelerated premium payment rider.

If You pay premiums more frequently than annually, an additional charge will be included.

## 14. ADDITIONAL POLICY FEATURES

A. **MEDICAL UNDERWRITING.** The issuance of a policy will depend on the medical information obtained from Your application and any other authorized medical information We require.

B. **CONTINGENT BENEFITS UPON LAPSE.** Contingent Benefits Upon Lapse is included in the policy. In the event of a Substantial Premium Increase as defined in the policy, We will send You written notice of the increase at least forty-five (45) days before it takes effect.

We will provide limited coverage ("Contingent Nonforfeiture Coverage") if Your policy ends because of nonpayment of premiums or Your written request to cancel the policy, within 120 days of a Substantial Premium Increase. If Contingent Nonforfeiture Coverage takes effect, the same benefit amounts as those payable under the policy immediately prior to the Contingent Nonforfeiture Date will be payable under Contingent Nonforfeiture Coverage, except that the Total Lifetime Benefit will be the greater of: (1) the sum of all premiums paid or waived under the terms of the policy; or (2) thirty (30) times the Facility Daily Benefit Amount in effect immediately prior to the Contingent Nonforfeiture Date. The total Benefits paid after the Contingent Nonforfeiture Date will not be more than the remaining Total Lifetime Benefit (after taking into account any prior claims paid) when your policy ends. You will also have the opportunity to reduce Your benefits so that Your premium will not increase.

C. **EXTENSION OF BENEFITS.** If as of the date Your policy lapses, or as of the date We receive a written request to cancel the policy, You are eligible for Benefits and are confined in a Facility, We will extend the payment of Benefits received so long as, without interruption, You remain eligible for Benefits and confined. Subject to the Elimination Period and the terms of the policy, Benefits

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 56 of 59

---

LTC2-OC-PREM-IL                    Outline p. 9                    **PREMIER**
                                                                   **LTC01830 (0105)**

**MetLife**®

Metropolitan Life Insurance Company
New York, NY

will be extended only until the earliest of the date: (1) You are no longer eligible for Benefits; or (2) You are no longer confined in a Facility; or (3) the Total Lifetime Benefit has been paid.

D. **GRACE PERIOD.** You have a grace period of thirty-one (31) days to pay each premium due after the first premium. If the premium is not paid by the end of the grace period, We will send a written notice of Lapse of the policy to You and to any person named to receive such notice at the addresses given to Us. You have thirty-five (35) days after We mail this notice to pay the premium. The policy will stay in force during this time unless We receive a written request from You to cancel the policy. If We do not receive the premium within thirty-five (35) days of mailing the notice, the policy will then Lapse at the end of this thirty-five (35) day period.

E. **THIRD PARTY NOTIFICATION.** You have the right to name a person to receive notice of Lapse at the same time We send such notice to You. The person named will not be responsible for payment of the premium. You are responsible to inform Us of any change relating to the person named. We will inform You of Your right to change the person named at least once every two- (2) years.

F. **REINSTATEMENT.** If Your policy Lapses, We will reinstate Your policy back to the date it Lapsed, if within twelve (12) months of that date You or someone acting for You:

1. request reinstatement; and
2. submit proof of good health, acceptable to Us, at Your expense; and
3. pay all past due premiums to Us, if We approve Your request for reinstatement.

If We reinstate Your policy, Your premium will be what it would have been if Your coverage had not Lapsed.

G. **REINSTATEMENT FOR COGNITIVE IMPAIRMENT OR LOSS OF FUNCTIONAL CAPACITY.** If Your policy Lapses, We will reinstate Your policy back to the date it Lapsed, without proof of Your good health, if within six (6) months of that date You or someone acting for You:

1. request reinstatement; and
2. submit proof acceptable to Us, that You suffered a Severe Cognitive Impairment or loss of functional capacity before the policy Lapsed; and
3. pay all past due premiums to Us, if We approve Your request for reinstatement.

The standard of proof We will use will be no more restrictive than that described in the Eligibility for the Payment of Benefits section of the policy. If We reinstate Your policy, Your premium will be what it would have been if Your coverage had not Lapsed.

15. **CONTACT THE STATE SENIOR HEALTH INSURANCE ASSISTANCE PROGRAM IF YOU HAVE GENERAL QUESTIONS REGARDING LONG-TERM CARE INSURANCE. CONTACT METLIFE IF YOU HAVE SPECIFIC QUESTIONS REGARDING YOUR LONG-TERM CARE INSURANCE POLICY.**

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 51 of 53

LTC2-OC-PREM-IL

Outline p. 10

**PREMIER**
LTC01830 (0105)

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 52 of 53

# EXHIBIT D

ALLAN S. BRODSKY
1412 MAPLE AVENUE
WILMETTE, IL 60091
TEL 847.721.4903
FAX 847.475.4909

## FACSIMILE TRANSMITTAL SHEET

| TO: MET | FROM: Allan S. Brodsky |
|---|---|
| COMPANY: MET | DATE: 9/23/10 |
| FAX NUMBER: 952.833.5410 | TOTAL NO. OF PAGES INCLUDING COVER: 1 |

RE:

MET LTCI Policy # 14363-11111

Premium Change Request

ELECTRONICALLY FILED
4/17/2018 6:04 PM
2018-L-003904
PAGE 53 of 53

September 23, 2010

To whom it may concern:

This is a formal request to have Met LTCI Policy # 14363-11111 changed to a new benefit of $200 per day. All else with this policy should remain the same.

Please send a new bill as soon as possible reflecting the new premium with both quarterly and annual costs. Please also confirm receipt of this FAX by sending a return FAX to the number listed above (847.475.4909).

Many thanks,

Allan S. Brodsky
1412 Maple Avenue
Wilmette, IL 60091

CC:    Ron Cohen
       Michael Walls
       Stephanie Smith-Howard